## Kear v. Levinson et al.

*H. Fischer*, for plaintiff.
*Sklar & Pearl*, for defendants.

OLIVER, P. J., March 8, 1950.—The matter is before the court on plaintiff's petition and rule for arbitration and defendants' answer thereto.

The petition alleges that on July 11, 1949, plaintiff and defendants entered into an agreement in writing in anticipation of the incorporation of the York Painters and Paperhangers Training School. The proposed corporation was to be composed of the parties, with a capital stock of $500, divided into 500 shares of $1 par value each. Defendant Levinson agreed to subscribe for 497 shares of common stock of the corporation; the remaining parties each agreed to subscribe for one share of common stock. The agreement further provided for the assignment of various numbers of shares by Levinson to the other parties so that eventually Levinson would hold a one-third interest in the corporation, Spector, a one-sixth interest, and Feldman and Kear each, a one-fourth interest. In addition to providing for certain loans to be made by Levinson to the corporation, security for the same, and employment contracts between the corporation and the parties, the agreement provides:

"6. That the unanimous consent of the stockholders hereto shall be required for all corporate matters and in the event of any dispute then such dispute shall be referred to arbitration . . .".

The petition further alleges that disputes have arisen between the parties regarding the operation of the corporation, employment of relatives, salaries, and certain purchases made notwithstanding plaintiff's objections.

Plaintiff petitions this court to order the disputed matters submitted to arbitration, alleging that his attempts to settle the same and his demands for arbitrations have been ignored by defendants.

The answer admits the execution of the agreement and avers that paragraph six thereof (set forth above)

was superseded by the articles of incorporation and the bylaws of the corporation; that the articles of incorporation and the bylaws were accepted and approved by the parties on August 31, 1949, at a meeting of the shareholders of the corporation, at which plaintiff was present and orally and in writing assented to each and every provision thereof.

The articles of incorporation provide, inter alia, that plaintiff and defendants shall serve as the four directors of the corporation for one year.

Article IV of the bylaws provides as follows:

"1. The business of this corporation shall be managed by its board of directors, 3 in number. They shall be elected by the shareholders at the annual meeting of the shareholders of the corporation, and each director shall be elected for the term of one year. . . .

"2. In addition to the powers and authorities by these By-Laws expressly conferred upon them, the Board may exercise all such powers of the corporation and do all such lawful acts and things as are not by statute or by the Articles or by these By-Laws directed or required to be exercised or done by the shareholders. . . .

"7. A majority of the directors in office shall be necessary to constitute a quorum for the transaction of business, and the acts of a majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors."

The remaining averments of the answer concern matters which are not important to our decision.

It is urged and insisted on the part of plaintiff that the only issue to be decided by this court is whether (1) there is an agreement for arbitration, and (2) whether there has been arbitration under the agreement, and that the court, if satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, must direct the parties to

proceed to arbitrate in accordance with the terms of the agreement.

This contention as applied to the facts of the instant case is without merit. The Act of April 25, 1927, P. L. 381, sec. 1, 5 PS §161, provides:

"A provision in any written contract, except a contract for personal services, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

This necessarily places primary emphasis on the fundamental issue before us of whether or not there exists an agreement in writing, binding on the parties, which requires them to submit the particular dispute to arbitration.

Normal contract rules concerning enforcibility, revocation and modification, etc., apply with equal force to contracts containing arbitration clauses, and an answer setting forth revocation of the contract as a defense raises an issue which must be decided. We cannot accept plaintiff's contention that the only valid answer to a petition for arbitration is that there never was an agreement for arbitration, or that there has been compliance with the agreement to arbitrate.

It is admitted that the parties as promoters of the corporation agreed in writing "that the unanimous consent of the stockholders . . . shall be required for all corporate matters and . . . any dispute referred to arbitration". A responsive answer to the petition having been filed and no depositions taken, the averments in the answer are deemed admitted for the purpose of this decision.

The bylaws adopted by the parties at a shareholders' meeting provide that the business of the corporation ". . . shall be managed by its Board of Directors, 3 in

number . . ."; ". . . that the Board may exercise all such powers of the corporation and do all such lawful acts and things as are not by statute or by the Articles or by these By-Laws directed or required to be exercised or done by the shareholders . . .", and that ". . . the acts of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors. . .".

It is true that the terms of the promoters' agreement were carried out as to the subscriptions, purchase, and assignment of the shares of stock of the corporation, the loan of money by defendant Levinson, and the subsequent incorporation of the York Training School. But these facts do not make that agreement perpetual and superior in force and effect to the subsequently adopted bylaws of the company. It is not contended that there is any reference to or mention of the promoters' agreement in either the articles of incorporation or the bylaws, nor do we think such would have been proper.

The law is well settled to the effect that bylaws, consistent with the constitution and statutes of our State, are really the private statutes of the company, enacted by the shareholders for regulation of its affairs: Elliot et al. v. Lindquist et al., 356 Pa. 385 (1947). We are therefore convinced and so hold that bylaws regularly adopted by the shareholders of the corporation which are in conflict with the terms of a contract between the parties, antedating the articles of incorporation and the adoption of the bylaws relating to directors, management and control of the corporation, supersede a promoters' agreement which provides that a unanimous decision is necessary on all corporation matters, and that otherwise the dispute shall be submitted to arbitration: Coe v. Leckrone Coke Co. et al., 30 Pa. C. C. 113 (1904).

We are inclined to the conclusion that the arrangement evidenced by the promoters' agreement was a

tentative one intended to provide workable machinery to expedite the solution of "pre-incorporation" disputes. It is inconceivable that the parties as members of the board of directors entitled to manage and control the business and policy of the corporation would surrender these rights to named arbitrators. Such a provision would be tantamount to handing over the control of the corporation to persons who are strangers to the corporate functions.

We are of the opinion that plaintiff is not entitled to relief prayed for, and therefore conclude that the rule should be discharged.